IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

KENNETH R. WILSON                                        PETITIONER


v.                              5:05CV00230 JLH-JFF



LARRY NORRIS, Director,
Arkansas Department of
Correction                                               RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

     The following recommended disposition has been sent to United States District Court Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

     If you are objecting to the recommendation and also desire to submit new,

different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.   The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## DISPOSITION

Before the Court is the Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Magistrate Judge undersigned recommends that the petition be dismissed with prejudice.

Following a bench trial in Pulaski County Circuit Court on May 14, 2003, Petitioner was convicted of manufacturing methamphetamine, possession of drug paraphernalia with intent to manufacture methamphetamine, possession of methamphetamine, and maintaining a drug premises. He was sentenced to a total of

fifty-four (54) months' imprisonment in the Arkansas Department of Correction. Petitioner appealed to the Arkansas Court of Appeals. For reversal, Petitioner argued that the trial court erred in denying his directed verdict motion because the State failed to show that he had either actual or constructive possession of the contraband that was found in a barn behind Petitioner's residence. The Arkansas Court of Appeals found that Petitioner's signed statement to police admitting ownership of the materials found in the barn was direct evidence that the contraband belonged to him and alone was sufficient to sustain his "conviction." Accordingly, the Court of Appeals affirmed the judgment of the circuit court in an unpublished opinion. Wilson v. State, No. CACR 03-1045, 2004 Ark. App. LEXIS 736 (Ark. Ct. App. Oct. 27, 2004).

On September 10, 2003, prior to the Arkansas Court of Appeals' decision affirming the judgment of the circuit court, Petitioner filed a post-conviction petition in circuit court pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. He alleged, *inter alia*, that counsel was ineffective. By an order filed on October 13, 2003, the circuit court dismissed Petitioner's Rule 37 petition without prejudice, finding that Petitioner was not entitled to pursue simultaneously a direct appeal and post-conviction relief pursuant to Rule 37. Petitioner did not perfect an appeal from the circuit court's order.

On August 8, 2005, Petitioner filed his § 2254 petition in this Court. He raises the following grounds for relief:

  1.   "[M]embers of the Drug Task Force and/or the Little Rock Police Department were derelict in their duty to provide service and protection to petitioner by pursuing the facts provided by petitioner to apprehend the true criminals and instead perpetrated an outrageous conduct to obtain fabricated evidence against

petitioner through coercion";

2.     "[T]he evidence is insufficient to prove constructive yet alone actual possession or any intent on petitioner's part to be a conspirator in furtherance of any crime"; and

3.     Petitioner is actually innocent of all charges.

Respondent asserts that Claim 1 is procedurally barred.  A district court ordinarily is precluded from substantively considering any claim that a petitioner has failed to "fairly present" to the highest state court. Wemark v. Iowa, 322 F.3d 1018, 1020-21 (8th Cir.), cert. denied, 540 U.S. 870 (2003); Trevino v. Dahm, 2 F.3d 829, 831 (8th Cir. 1993).  "A claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." Wemark, 322 F.3d at 1021 (quoting Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996)).  Even if the factual foundation underlying the federal habeas claim parallels the petitioner's allegations in state court, the fairly presented requirement is not satisfied unless the petitioner presented the same federal legal theories in state court that he is raising in federal court. Wyldes v. Hundley, 69 F.3d 247, 252 (8th Cir. 1995), cert. denied, 517 U.S. 1172 (1996). "The federal legal theory or theories must plainly appear on the face of the petitioner's state court briefs." Jones v. Jerrison, 20 F.3d 849, 854 (8th Cir. 1994). In order to fairly present a federal claim to the state courts, the petitioner must have referred to "'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in a claim before the state courts." Myre v. State of Iowa, 53 F.3d 199, 200-01 (8th Cir. 1995) (quoting Kelly v. Trickey, 844 F.2d 557, 558 (8th Cir. 1988)); Ford v. Norris, 364 F.3d 916, 919 (8th Cir.

2004); McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997); Barrett v. Acevedo, 169 F.3d 1155, 1161-62 (8th Cir.), cert. denied, 528 U.S. 846 (1999). See also Duncan v. Henry, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court"). "Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." Barrett, 169 F.3d at 1161-62.

Where the petitioner has failed to fairly present his claims to the highest state court, the claims are procedurally defaulted, and a federal district court cannot consider them unless the petitioner can demonstrate cause for the default and actual prejudice, or show actual innocence. Wemark, 322 F.3d at 1021-22. The existence of cause "must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). At a minimum, a petitioner must show that something "*external* to [him], something that cannot be fairly attributed to him," caused the procedural default. Ivy v. Caspari, 173 F.3d 1136, 1140 (8th Cir. 1999) (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)). For example, a showing that the factual or legal basis for the claim was not reasonably available to counsel, that some interference by officials made compliance impracticable, or that counsel's performance was constitutionally ineffective under Strickland v. Washington, 466 U.S. 668 (1984), would constitute factors external to the defense and cause for a procedural default. Coleman, 501 U.S. at 753. Where a prisoner has no constitutional right to an attorney,

such as in state post-conviction proceedings, any attorney error that led to default cannot constitute cause to excuse the default in federal court. <u>Coleman</u>, 501 U.S. at 757; <u>Sweet v. Delo</u>, 125 F.3d 1144, 1151 (8th Cir. 1997), <u>cert. denied</u>, 523 U.S. 1010 (1998).

A narrow exception to the cause and prejudice standard exists where the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray v. Carrier</u>, 477 U.S. at 496. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." <u>Schlup v. Delo</u>,  513 U.S. 298, 327 (1995); <u>Amrine v. Bowersox</u>, 238 F.3d 1023, 1029 (8th Cir.), <u>cert. denied</u>, 534 U.S. 963 (2001); <u>Brownlow v. Groose</u>, 66 F.3d 997, 999 (8th Cir. 1995).  To be credible, "a substantial claim that constitutional error has caused the conviction of an innocent person" must be supported with "new reliable evidence - - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial." <u>Schlup</u>, 513 at 324. "Evidence is only 'new' if it was 'not available at trial and could not have been discovered earlier through the exercise of due diligence.'" <u>Osborne v. Purkett</u>, 411 F.3d 911, 920 (8th Cir. 2005) (quoting <u>Amrine</u>, 238 F.3d at 1029).

The Magistrate Judge finds that Petitioner failed to fairly present Claim 1 (law enforcement officers were derelict in their duty to provide service and protection to him and "perpetrated an outrageous conduct to obtain fabricated evidence against petitioner through coercion") in his direct appeal to the Arkansas Court of Appeals.

Accordingly, the Magistrate Judge finds that Claim 1 is procedurally defaulted. Petitioner has not made allegations showing cause for his procedural default and actual prejudice.   Furthermore, he has not shown that in light of new reliable evidence, it is more likely than not that no reasonable juror or trier of fact would have convicted him. All the evidence that Petitioner asserts shows his innocence either was received at trial or existed at the time of trial and could have been discovered earlier through the exercise of due diligence. Accordingly, the Magistrate Judge recommends that Claim 1 be dismissed as procedurally barred.

Petitioner contends that "the evidence is insufficient to prove constructive yet alone actual possession . . . ."

At Petitioner's trial, evidence was received indicating that on September 12, 2001, narcotics officers employed by the Little Rock Police Department received information that there was a possible methamphetamine lab at 6912 Stagecoach Road in Little Rock. Tr. 4.   Around 8:00 p.m. on the same day, officers went to the Stagecoach Road address. Tr. 4, 12.  Upon arriving, officers, including Detective Greg Siegler, talked to Teresa Diane Weidman, who resided at the address with Petitioner, her boyfriend. Tr. 4, 47.  Ms. Weidman and Petitioner rented the home.  Tr. 47.  Ms. Weidman consented to a search of the premises.  State's Exhibit No. 1.  According to Detective Siegler, a search of the kitchen area of the residence revealed several items associated with the manufacture of methamphetamine, including one coffee filter, one can of Red Devil lye, one can of drain opener, one glass jar with a spigot, one pint of hydrogen peroxide, a coffee filter holder, one bottle of HEAT, 38 Max Brand

pseudoephedrine tablets, digital scales, hand-held scales, a glass tube, and a plastic tube with residue. Tr. 5, 11-17. Officers then went to a barn[1] behind the residence, where they spotted items used to manufacture methamphetamine through a window. Tr. 5.  The barn was locked, and Ms. Weidman did not have a key to it.  Tr. 5, 22, 27. Ms. Weidman informed Detective Siegler that Petitioner had a key to and access to the barn. Tr. 27.  Officers forced the lock open, opened the door, and found a meth lab. Tr. 5, 27.  Detective Siegler then contacted Petitioner by telephone and told him that officers had found a meth lab at his residence. Tr. 5, 22.  Petitioner told Detective Siegler that he would come home.  Tr. 5, 22.

Upon Petitioner's arrival at the Stagecoach Road address, Detective Siegler questioned Petitioner about "the meth lab and things." Tr. 37-38.  Detective Siegler testified that Petitioner told him that there were other people living at the residence, that everything police found belonged to them, that they were the ones manufacturing the methamphetamine, that he (Petitioner) knew they were out there, and that he was trying to get them to leave the residence.  Tr. 14, 22-23, 28, 30, 38-39.  According to Detective Siegler, the questioning occurred after Petitioner was in custody but before Petitioner was read his *Miranda* rights. Tr. 37-38. Siegler also testified that Petitioner showed up at the crime scene and "eventually" told him that "everything in the shed is mine." Tr. 43. Siegler testified that he subsequently Mirandized Petitioner and had him write out what he had told Siegler previously. Tr. 30.   When asked whether he told Petitioner he would not arrest Ms. Weidman if Petitioner made a statement, Siegler

---

[1]  At trial, the barn was referred to as a shop, workshop, out-building, and shed.

stated: "I'm sure I told him if he was going to give a statement saying it was his, that no, I wouldn't charge her because if it's his, why would I charge her?" Tr. 31.

Detective Siegler testified that Petitioner executed a handwritten statement at the Little Rock Police Department after being read his *Miranda* rights and waiving those rights. Tr. 9.  The rights form, which Petitioner signed at 10:10 p.m. on September 12, 2001, was received into evidence without objection as State's Exhibit No. 2. Tr. 9.  The handwritten statement, which Petitioner executed at 10:25 p.m. on September 12, 2001, was received into evidence without objection as State's Exhibit No. 3. Tr. 10. The signed, handwritten statement provided as follows: "This is to state that all items found in the out-building at the address above[2] belongs [sic] to me personally and no other. Dianne Weidman had no involvement in any illegal activity or knowledge of same."

During Detective Siegler's testimony, after Petitioner's handwritten statement had been received into evidence, Petitioner's counsel moved to suppress Petitioner's "statement," arguing that Detective Siegler had clearly admitted that he questioned and obtained information from Petitioner pre-*Miranda* and that he told Petitioner that if he gave a statement Ms. Weidman would not be arrested.  Tr. 40-41. Counsel argued that the statement was a product of promises made to Petitioner. Tr. 41.  Counsel also argued that officers, before Mirandizing Petitioner, got the information they wanted, "including this statement," which was "ultimately reduced to written form." Tr. 41-42. At the conclusion of Detective Siegler's testimony, the trial judge granted Petitioner's

---

[2]  6912 Stagecoach Road.

motion to suppress, ruling that Petitioner's "statement will not be received in evidence."[3] Tr. 46.   In so ruling, the trial judge stated: "I note for the record that whenever there's testimony that a person's rights have been violated, I feel this Court has a duty to take care of it just as if someone had testified without objection that they had been beaten into a confession. Tr. 46.

Teresa Weidman testified on direct examination by the State that Petitioner kept his tools, working utensils, lumber, and "all his stuff that he needed for his construction business" in the barn at the Stagecoach Road address. Tr. 47. She stated that Petitioner kept the barn locked and that he locked the barn every time he left the property. Tr. 48.  Ms. Weidman testified that she did not have a key to the barn. Tr. 48. She also indicated that she did not have access to the barn. Tr. 48.   On cross-examination, Ms. Weidman testified that a couple had moved in with her and Petitioner "for a little bit." Tr. 48.  Ms. Weidman stated that one of the members of the couple, Tony, who did woodwork for Petitioner, had access to the barn just prior to Petitioner's arrest on September 12, 2001. Tr. 48-49.  However, she could not recall the last time she saw Tony "out there." Tr. 48.  Ms. Weidman testified that there were times when Tony was in the barn and Petitioner was not, but that did not happen on a regular basis. Tr. 49.  On redirect, Ms. Weidman testified that Petitioner told her after "the bust" that he had found the meth lab "two days prior." Tr. 51.

---

[3]   The trial judge did not explicitly indicate to which statement he was referring - - Petitioner's oral statement that "everything in the shed is mine" or his handwritten statement that "all items found in the out-building at the [Stagecoach Road address] belongs [sic] to me personally and no other." The Magistrate Judge finds that the judge likely was referring to both the oral statement and handwritten statement.

Evidence was received in the State's case demonstrating that narcotics officers found numerous items normally used for manufacturing methamphetamine in the barn behind Petitioner's residence during their search on September 12, 2001.  These items included three bottles of HEAT, two gallons of acetone, one gallon of paint thinner, one quart of hydrogen peroxide, a can of propane, two containers, one strainer, one wad of tape with brown stains, one small glass jar with a cloudy liquid and red sediment, five glass jars, one can of Red Devil lye, two pieces of rubber tubing with stains, one pint of Liquid Fire, one quart of drain opener, one quart of denatured alcohol, one gallon of distilled water, one plastic bottle with a rubber hose attached containing a granular substance, one jug labeled MSM, one cup yellow liquid, one glass jar containing a white powder, a coffee filter with residue, a glass jar with a white power residue, plastic containers with red powder in them, a flour sifter with red powder in it, coffee filters containing powder,  and some paraphernalia containing residue on the smoking device. Tr.  53-57, 64-71, 83-87.

Ken Blankenship, a narcotics officer employed by the Little Rock Police Department, testified that when he entered the barn, there was a real strong chemical odor. Tr. 57.  Chris Harrison, a forensic chemist at the Arkansas State Crime Lab, testified that the items found in the barn behind Petitioner's residence were "the precursors necessary for manufacturing meth using the HI Red P method." Tr. 83.  Mr. Harrison testified that the bottle labeled "MSM" contained 251.2 grams of "di-methyl sulphone," which is a common cutting agent used to make methamphetamine weigh more. Tr. 85. Testing revealed that the yellow liquid in a cup, the white powder residue

on two glass jars, residue on coffee filters, and residue on drug paraphernalia were methamphetamine. Tr. 83-87. Mr. Harrison testified that he noticed a strong chemical odor when he arrived at the scene and that in his opinion the meth lab was active. Tr. 89.

After the close of the State's case, Teresa Weidman testified on behalf of the defense. She testified that Tony and Diana were staying at her house because "they were coming back to town to take care of turning themselves in and getting an attorney for a supposed meth lab that was at their house, busted a few months ago before this." Tr. 100.   She testified that "this [ was] not a permanent living arrangement." Tr. 100-101.   On cross-examination, Ms. Weidman testified that Petitioner was "the person that has the key to that shed, and he locks it when he leaves." Tr. 101.   She testified that if Tony were in the shed, he most likely would be under the direction of Petitioner. Tr. 101.  On redirect, Ms. Weidman testified that she did not know if Tony had a key to the shed. Tr. 102.

At the close of the evidence, Petitioner's counsel moved for a directed verdict, arguing that the State had not produced any evidence linking Petitioner to control or management of the items seized and that there was clearly evidence that more than one person had access to both the home and barn. Tr. 103. Counsel also argued that the State had not proven possession beyond a reasonable doubt. Tr. 104. The trial judge denied Petitioner's motion for directed verdict and found Petitioner guilty of manufacturing methamphetamine,[4] possession of drug paraphernalia with intent to

---

[4] Ark. Code Ann. § 5-64-401(a) (Supp. 2001) makes it unlawful for any person to manufacture methamphetamine.  "Manufacture" means "the production, preparation,

manufacture methamphetamine,[5] possession of methamphetamine,[6] and maintaining

a drug premises.[7] Tr. 105, 107. On appeal, Petitioner argued that the trial court erred

in denying his directed verdict motion because the State failed to show that he had

either actual or constructive possession of the contraband that was found in the barn

behind Petitioner's residence.  The Arkansas Court of Appeals held that Petitioner's

signed statement to police admitting ownership of the materials found in the barn was

direct evidence that the contraband belonged to him and alone was sufficient to sustain

his "conviction." As previously noted, Petitioner's signed statement initially was received

into evidence by the trial judge, but the judge subsequently granted Petitioner's motion

to suppress the statement, ruling that the statement would not be received into

-------

propagation, compounding, conversion, or processing of a controlled substance, either
directly or indirectly by extraction from substances of natural origin, or independently by
means of chemical synthesis, or by a combination of extraction and chemical synthesis
. . . ." Ark. Code Ann. § 5-64-101(m) (Repl. 1997).

[5] Ark. Code Ann. § 5-64-403(c)(5) (Supp. 2001) makes it unlawful for any person
to possess drug paraphernalia with intent to manufacture methamphetamine.  The term
"drug paraphernalia" means "all equipment, products, and materials of any kind which
are used, intended for use, or designed for use, in planting, propagating, cultivating,
growing, harvesting, manufacturing, compounding, converting, producing, processing,
preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing,
injecting, ingesting, inhaling or otherwise introducing into the human body a controlled
substance in violation [of the Controlled Substances Act]."  Ark. Code Ann. § 5-64-
101(v) (Repl. 1997).

[6] Ark. Code Ann. § 5-64-401(c) (Supp. 2001) makes it unlawful for any person to
possess methamphetamine.

[7] Ark. Code Ann. § 5-64-402(a)(3) (Repl. 1997) makes it unlawful for any person
"[k]nowingly to keep or maintain any store, shop, warehouse, dwelling, building, or other
structure or place or premise, which is resorted to by persons for the purpose of using
or obtaining these substances or which is used for keeping them in violation [of the
Controlled Substances Act]."

evidence.

This Court's power to review state court decisions in habeas corpus cases is restricted to the "limited and deferential review" mandated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir. 2004), cert. denied, 125 S. Ct. 2526 (2005) (quoting Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir.), cert. denied, 543 U.S. 1027 (2004)).  Under the AEDPA, a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim" (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Liggins v. Burger, 422 F.3d 642, 646-47 (8th Cir. 2005); Brown v. Luebbers, 371 F.3d 458, 460 (8th Cir. 2004), cert. denied, 125 S. Ct. 1397 (2005); Johnston v. Luebbers, 288 F.3d 1048, 1051 (8th Cir. 2002), cert. denied, 537 U.S. 1166 (2003).  "A state court decision is 'contrary to' clearly established federal law if the rule applied by the state court directly contradicts Supreme Court precedent or if the state court reached a result opposite a result reached by the Supreme Court on 'materially indistinguishable' facts." Johnston, 288 F.3d at 1051 (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). "A state court decision involves an unreasonable application of Supreme Court precedent if it correctly identifies the governing legal rules but unreasonably applies them to the facts of the prisoner's case." Ford v. Bowersox, 256 F.3d 783, 786 (8th Cir.), cert. denied, 534 U.S. 1068 (2001)

–14–

(citing Williams v. Taylor, 529 U.S. at 407). "The focus under the unreasonable application test is 'whether the state court's application of clearly established federal law is objectively unreasonable.'" Hoon v. Iowa, 313 F.3d 1058, 1061 (8th Cir. 2002) (quoting Bell v. Cone, 535 U.S. 685, 694 (2002)). "An incorrect decision is not necessarily unreasonable, and [this Court] may not grant a writ of habeas corpus unless the state court decision is both wrong and unreasonable." Palmer v. Clarke, 408 F.3d 423, 429 (8th Cir.), cert. denied, 126 S. Ct. 755 (2005); Colvin v. Taylor, 324 F.3d 583, 587 (8th Cir.), cert. denied, 540 U.S. 851 (2003). "A reasonable application of established federal law 'does not require citation of [United States Supreme Court] cases-indeed, it does not even require *awareness* of [these cases], so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Cox v. Burger, 398 F.3d 1025, 1030 (8th Cir. 2005) (quoting Early v. Packer, 537 U.S. 3, 8 (2002)). "Finally, a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir.), cert. denied, 540 U.S. 1059 (2003).

Even if a state court renders a decision contrary to, or unreasonably applying, Supreme Court precedent under § 2254(d)(1), or issues a decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding under § 2254(d)(2), a habeas petitioner, to be entitled to relief, must still meet the standard set forth in 28 U.S.C. § 2254(a) - - *i.e*, he must demonstrate that "he is in custody in violation of the Constitution or laws or treaties of the United States."

-15-

See Aleman v. Sternes, 320 F.3d 687, 690 (7th Cir.), cert. denied, 539 U.S. 960 (2003)
(Even if the state court renders a decision contrary to, or unreasonably applying, federal
law under § 2254(d)(1), a habeas petitioner, to be entitled to relief, must still meet the
standard set forth in § 2254(a)); Stevens v. Horn, 319 F. Supp. 2d 592, 614 (W.D. Pa.
2004) (even if a state court's decision is contrary to Supreme Court precedent under
§ 2254(d)(1), the petitioner must still show that his constitutional rights were violated
to be entitled to relief); Palmer v. Clarke, 408 F.3d at 436 (even if a state appellate
court errs in its analysis, a habeas petitioner "is not entitled to relief on this ground
unless his constitutional or statutory rights were violated. See 28 U.S.C. § 2254(a)");
Gibbs v. Van Natta, 329 F.3d 582, 584 (7th Cir. 2003) ("Gibbs is not entitled to relief in
the federal courts unless he can show that he was in fact denied effective assistance
of counsel, not merely that the state courts bobbled the issue.").

   In assessing whether there is sufficient evidence to support a conviction, a
federal court's scope of review is "extremely limited." Sera v. Norris, 400 F.3d 538, 543
(8th Cir.), cert. denied, 126 S. Ct. 283 (2005) (quoting Whitehead v. Dormire, 340 F.3d
532, 536 (8th Cir. 2003)). "It is not relevant whether [the court] believe[s] that the
evidence at trial established guilt beyond a reasonable doubt." Sera, 400 F.3d at 543.
Rather, under Jackson v. Virginia, 443 U.S. 307 (1979), the court must determine
"whether, after viewing the evidence in a light most favorable to the prosecution, *any*
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt." Sera, 400 F.3d at 543 (quoting Jackson v. Virginia, 443 U.S. at 318-
319); Loeblein v. Dormire, 229 F.3d 724, 726 (8th Cir. 2000), cert. denied, 532 U.S. 892
(2001). "This standard recognizes that it is the province of the fact-finder, not this court,

-16-

'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Sera, 400 F.3d at 543 (quoting Jackson v. Virginia, 443 U.S. at 318-319).

Petitioner contends that "the evidence is insufficient to prove constructive yet alone actual possession . . . ."

In Darrough v. State, 330 Ark. 808, 957 S.W.2d 707 (1997), the Supreme Court of Arkansas summarized Arkansas law on constructive possession:

> Under our law, it is clear that the State need not prove that the accused physically possessed the contraband in order to sustain a conviction for possession of a controlled substance if the location of the contraband was such that it could be said to be under the dominion and control of the accused, that is, constructively possessed. Heard v. State, 316 Ark. 731, 876 S.W.2d 231 (1994); Crossley v. State, 304 Ark. 378, 802 S.W.2d 459 (1991). We have further explained:
>
>> Constructive possession can be implied when the controlled substance is in the joint control of the accused and another. Joint occupancy, though, is not sufficient to establish possession or joint possession. There must be some additional factor linking the accused to the contraband. The State must show additional facts and circumstances indicating the accused's knowledge and control of the contraband.
>
> Hendrickson v. State, 315 Ark. 182, 189, 871 S.W.2d 362, 365 (1994) (citations omitted). When seeking to prove constructive possession, the State must establish (1) that the accused exercised care, control, and management over the contraband, and (2) that the accused knew the matter possessed was contraband. (citations omitted).

Darrough v. State, 330 Ark. at 811, 957 S.W.2d at 708-09. See also Walley v. State, 353 Ark. 586, 595-96,112 S.W.3d 349, 353-54 (2003).

Control over contraband "can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found." McKenzie v. State, 2005 Ark.

LEXIS 298 at 5 (Ark. Sup. Ct. May 12, 2005). "It cannot be inferred that one in non-exclusive possession of premises knew of the presence of drugs and had joint control of them unless there were other factors from which the jury can reasonably infer the accused had joint possession and control." Walley, 353 Ark. at 596, 112 S.W.3d at 354 (quoting Ravellete v. State, 264 Ark. 344, 346, 571 S.W.2d 433, 434 (1978)).

The evidence against Petitioner, viewed in a light most favorable to the prosecution, is as follows:  Petitioner and Teresa Weidman rented the premises at 6912 Stagecoach Road.  Petitioner kept his tools, working utensils, lumber, and "all his stuff" he needed for his construction business in the barn behind the residence at the Stagecoach Road address.  The contraband at issue was found in the barn.  Officers spotted some of the contraband in the barn through a window.  Petitioner had the only key to the barn.  Teresa Weidman did not have a key to nor access to the barn.  Petitioner kept the barn locked, and he locked the barn every time he left the property.  There was strong chemical odor in the barn at the time officers searched the property on September 12, 2001.  Petitioner knew about the meth lab prior to his arrest on September 12, 2001.

First of all, in viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that (i)  the barn behind Petitioner's residence was not jointly occupied, (ii) Petitioner had exclusive care, control, and management over the barn and the contraband in the barn, and (iii) Petitioner knew the items in the barn were contraband.  Therefore, the evidence was sufficient to demonstrate that Petitioner constructively possessed the contraband. The trial judge, as the trier of fact, was free to disbelieve Teresa Weidman's testimony that

"Tony" had access to the barn just prior to Petitioner's arrest, and it is quite possible that the judge chose not to believe this testimony. See  United States v. Evans, 220 F.3d 950, 953 (8th Cir. 2000); Jones v. State, 355 Ark. 630, 637, 144 S.W.3d 254, 258 (2004); Butler v. State, 349 Ark. 252, 258, 82 S.W.3d 152, 155 (2002).  Secondly, even if this Court assumes that there was joint occupancy of the barn by Petitioner and "Tony," the evidence is still sufficient to show that Petitioner exercised care, control, and management over the contraband and that he knew the items in the barn were contraband and, therefore, that he constructively possessed the contraband. The fact that Petitioner, who rented the premises, had the only key to the barn and locked the barn every time he left the property, that Petitioner had knowledge that there was a meth lab in the barn prior to his arrest, that there was strong chemical odor in the barn at the time officers searched the property, and that officers were able to spot contraband by looking through the window of the barn are additional factors indicating Petitioner's knowledge and control of the contraband.  In McKenzie v. State, 2005 Ark. LEXIS 298 (Ark. Sup. Ct. May 12, 2005), a constructive possession case, the Arkansas Supreme Court found that the State's evidence showing that the defendant had the only key to the place where drugs were found and other evidence were additional factors linking him to the contraband and thus rejected his challenge to the sufficiency of the evidence. McKenzie, 2005 Ark. LEXIS 298 at 8.

In conclusion, the Magistrate Judge finds that after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Petitioner constructively possessed the contraband in the barn behind his residence. While the Arkansas Court of Appeals, in adjudicating

-19-

Petitioner's argument on direct appeal that the evidence was insufficient to show that he had either actual or constructive possession of the materials found in the barn, erroneously relied on Petitioner's signed statement to police admitting ownership of the materials in the barn, its ultimate conclusion that the evidence was sufficient to demonstrate possession is correct.  Because Petitioner has not shown a violation of the Constitution or federal law, he is not entitled to habeas relief based on any error by the Arkansas Court of Appeals in its analysis. Aleman v. Sternes, 320 F.3d at 690; Palmer v. Clarke, 408 F.3d at 436.

Petitioner also contends "the evidence is insufficient to prove . . . any intent on petitioner's part to be a conspirator in furtherance of any crime." Intent to be a conspirator in furtherance of a crime is not an element of any crime of which Petitioner was convicted.  Accordingly, Petitioner's contention that the evidence is insufficient to prove any intent on his part to be a conspirator in furtherance of any crime, even if true, does not entitle him to relief.

Finally, Petitioner contends that he is actually innocent of all charges.  To prevail on a free-standing actual innocence claim, a habeas petition must present new evidence unquestionably establishing his innocence. Cornell v. Nix, 119 F.3d 1329, 1334-1335 (8th Cir. 1997); Whitfield v. Bowersox, 324 F.3d 1009, 1020 (8th Cir. 2003), cert. denied, 540 U.S. 1187 (2004); Allen v. Nix, 55 F.3d 414, 417 (8th Cir.), cert. denied, 516 U.S. 1014 (1995). Petitioner has presented no new evidence unquestionably establishing his actual innocence. All the evidence that Petitioner asserts shows his innocence either was presented at trial or existed at the time of trial and could have been discovered earlier through the exercise of due diligence.

Furthermore, the evidence does not unquestionably establish his actual innocence. The Magistrate Judge recommends that Petitioner's free-standing actual innocence claim be dismissed with prejudice.

THEREFORE, the Magistrate Judge recommends that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be dismissed with prejudice.

Dated this 6th day of February, 2006.


_____/s/ John F. Forster, Jr._____
UNITED STATES MAGISTRATE JUDGE